Juago Mills
delivered the Opinion of the Court.
In the year 1789, John Staton,' of Buckingham county, Virginia, made his last will and testament, which, on his death, was proved and recorded, in the same county, and the executors therein named not áctñng, letters of administration with the will annexed, were granted to Mary Staton his widow, who after-wards intermarried with John Thurman. By said will, one-third of his estafe, real and personal, was devised to his wife for life, and after her death, her share was to return to his estate. The residue of his estate not devised, was to be equally divided •impng his nine children, as they canje of age.
Allegations off the bill,
EmorspnB answer,
Oeeroe'of theoirGUl(: 00iIlt'
To give chan- or:rJ jurisdicofdefoctof5 proof, the fact sought t» od, miisTrest' exclusively ihtheknowlaofendañte& be susceptible; of no other identity of slaves 'is not su°bafec<_
His children filed this bill in chancery, charging that there was a negro slave named Phebe, belonging to said estate, who had now three children, and that the defendant (now appellant) had fraudulently and tortiously possessed himself of said slave Phebe and her children, and run them off to this country, where he held the children, alleging said Phebe was dead,* — that they had lately discovered where said slaves were, and- had demanded them, and he had refused to surrender them, and that the widow, Mrs,
Thurman, had departed this life a few months since. They prayed a decree for the slaves and an account of the hire. r,
The appellant answered, denying that he obtained the slaves which he held, fraudulently, and avers that he purchased them of another man for a valuable consideration; denies that be ever knew any thing of the mother of the slaves having belonged to the Staton family, or any thing about the family, and requires proof of the allegations of their bill. He states, that long after his purchas'e, he heard of a claim set up by the Staton family, and was told, though he did not know the truth of it, that the-slaves had belonged to the testator Staton, and were sold by his executors and administrators, to his widow, who had sold them to his vendor.
The court below decreed the recovery of the slaves by the complainants, from which the defendant appealed.
The first question here made is, that a court of chancery has no jurisdiction of (he case, and that the remedy ought to have been at law, and that the suit ought to have been brought by the personal representative.
If the complainants below had the right to sue at law, there is nothing in the bill calculated to give the chancellor any jurisdiction of the case, except an allegation' that the .complainants cannot establish the identity of the slaves, save by the aid of a discovery in a court of equity. Such attempts to translate the cognizance from-a court of law to a court of equity, ought not to bo favored. It would be very easy to insert such allegations, to give the chancellor possession of the cause, cont.*»ry to the *118 truth of the case. It is necessary to such transíatoin of the jurisdiction, for the purpose of discovery only, that the facts, of which the discovery is sought, should rest exclusively in the knowledge of the defendant, and bo susceptible of no oilier proof, ami that should he alleged in the bill. This is not done in this case, and the facts from their very nature, are susceptible of other proof. This caséis analogous in this respect, to that of Bullock &o. vs. Boyd, 2 Marsh. 322; and for the reasons there given, this point is against the Appellees.
Devíseos of (lie remain? dor in slaves, after tlie life estate to the widow is de(erorined by Jicr (loath, to maintain a suit for tlieir recovery, must have (bo assent of the personal representative, or shew in chancery it .is causelessly withheld.
Shewing the death of (lie administrator with the will annexed, in such care, will not avail, for (bon there rhonld lie an ailrmniistriitor bonis non, Me.
An administrator <?e bonis jnon, appointed by tile pqursiy court of Virginia, since the separation, with the will annexed, which hart been p-oved and tmorded in rhe court before ihe separation, may, under the compact, maintain a suit in this State, for slaves brought hero by defendant since that period.
*118 But we are not prepared to admit, that if the statement!} in this bill arc true, that the complainants below could sue either at law or equity for the slaves. The statement is, that the defendant below tortuosly and fraudulently run off these slav es, as taking them out of the estate before any distribution was made, if so”, it is clear that the personal representative was the proper person to commence the suit, whether brought in chancery or at ,law. Creditors have an interest in the fund, and it ought to pass through the hands of the personal representative, and be mingled with the assets in his hands, and the distributees ought not to be permitted to collect the fund from the hands of strangers, except they .shew the assent of the personal representative to such collection, whereby he would he charged with the fund, or by avering in a court of equity, that he causelessly withheld his assent» and neglected the pursuit himself, whereby the rights of the distributees would be prejudiced. Neither of these allegations are made here, and according to their own .shewing, therefore, they had no right of suit.
It is true they have alleged, that, the widow of the testator is dead, ami the will produced by them as paid of their bill, shews that sise took letters of ad? ministration with the w¡11 annexed. But it does not thence follow, that no administration de bonis non, could be granted.
It is true, according to their bill, the estate in suit was not in tisis country at the death of the testator, or at the date of the separation of this State from Virginia, cud it has been brought here since. But, according to the decision of this, court in the case of *119 May’s heirs vs. Slaughter, 3 Marsh 505, the counly court of Buckingham, in the State of Virginia, who recorded this will anterior to the separation, and granted letters of administration, did not, by the separation of the two States, lose the jurisdiction over this State, and might proceed to make future grants of letters of administration which could operate itere, by the terms of the compact between the two States. Of course, as there was no impediment existing to the appointment of another persona] representative, the right of suit must remain with him. and cannot be exercised by the distributees, under tlie allegations of the bill.
Remainder-man after a life estate, suing for •Slaves, rpustprovo, if not admitted, the (loath of (he tenant for life.
Where the pretext for (ho jurisdiction is a discovery, anfi tho foci: '•ought fully aopciU..; by com ¡dainaut's own proof*, he defoais liiflt*
Monroe for plaintiff; Bibb- fee tk'fcmlaiits,
We have thus far confined ourselves to the face of the bill, and when we turn our eyes to the answer and the proof, we derive therefrom, no aid to the jurisdiction of the chancellor. The proof makes out a case wholly variant from the allegations of the bill. It there appears that the estate was distributed by the assent of the personal representative — that the mother of the slaves now in contest was assigned to the widow of the testator for lile, and that her second husband sold said slave during the life of his wife, and his vendee again sold her to the present appellant, who removed the slave to Kentucky. And they have wholly failed to prove that the widow is,dead, whereby her life estate would he terminated- Here the assent of the personal representative appears, and it is apparent that there was no necessity of calling to their aid, a supposed necessary discovery, to give jurisdiction to the chancellor, if the widow ,was dead, and if she was not, the suit was premature.
The decree must, therefore, he reversed, with cost, and the cause be remanded with directions to dismiss the bill with costs.